UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PACNET SERVICES LTD., <br><br> Plaintiff-in-Interpleader, <br><br> v. <br><br> OFFICE OF FOREIGN ASSETS CONTROL of the UNITED STATES DEPARTMENT OF TREASURY; and JOHN DOE DEFENDANTS 1–73, <br><br> Defendants/Claimants-in-Interpleader. | Civil Action No. 17-cv-6027 (NGG) (LB) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**INTERNATIONAL PAYOUT SYSTEMS, INC.'S MOTION TO INTERVENE**

International Payout Systems, Inc. ("i-payout") respectfully submits this Memorandum of Law in Support of its Motion to Intervene pursuant to Rules 24(a)(2) and 24(b) of the Federal Rules of Civil Procedure.

**INTRODUCTION**

i-payout seeks to intervene in this interpleader action to assert its rights to protect more than $2 million of its—and, ultimately, its clients'—funds. i-payout satisfies the qualifications for intervention as of right under Rule 24(a)(2). i-payout's motion is timely, as it is being filed just 21 days after i-payout was put on notice of the existence of the action and before any further progression of the case. i-payout has a significant legally protected interest—a financial interest in the amount of $2,337,356.85—in the funds at issue, which will be impaired if i-payout is denied the opportunity to participate in the action, and which cannot be adequately protected by the existing parties. Moreover, i-payout's situation is nearly identical to that of Dartmouth Capital, LLC ("Dartmouth"). On December 7, 2017, the Court found that Dartmouth satisfied all the

criteria for intervention as of right under Rule 24(a)(2) and permitted it to intervene. Accordingly, i-payout should be granted the same opportunity.

Alternatively, for many of the same reasons, permissive intervention is appropriate under Rule 24(b). Intervention at this preliminary stage of the proceedings will not cause undue delay or prejudice to the existing parties, and i-payout's claim to the funds at issue is a common question shared by i-payout and the existing parties.

**BACKGROUND**

Plaintiff-in-Interpleader PacNet Services Ltd., together with its subsidiaries and affiliated companies (collectively, "PacNet" or the "PacNet Group") from 1994 until September 22, 2016 operated an international payment processing business headquartered in Vancouver, British Columbia. Complaint-in-Interpleader ("Compl.") (Dkt. 1) ¶ 23. On September 22, 2016, Defendant Office of Foreign Asset Control ("OFAC") designated PacNet as a significant transnational criminal organization. *Id.* ¶ 3. OFAC made the designation on the grounds that PacNet allegedly had engaged in money laundering when it processed payments on behalf of alleged mail fraud schemes aimed at U.S. residents. *Id.* As part of the action, OFAC placed PacNet, 12 of its employees and officers, and related entities on the Specially Designated Nationals and Blocked Persons List ("SDN List"). *Id.* As a result of the OFAC designation, PacNet's assets and accounts were frozen, including its customer funds held on deposit at U.S. banks. *Id.* ¶¶ 4, 52. Following these sanctions, PacNet ceased active operations in September 2016. *Id.* ¶ 5.

i-payout is a small U.S. technology company organized under the laws of Florida and headquartered in Fort Lauderdale, Florida, which provides secure software solutions to corporate clients by providing the software and associated services required to pay third parties (e.g., independent contractors, distributors). On behalf of its clients, i-payout manages data and

2

submission formats, pre-validation of beneficiary data, fraud prevention, Know Your Customer compliance, tax withholding management, transactional reporting, data retention, tracking, and other management services.

Chexx Inc. ("Chexx") is an entity within the PacNet Group structure, which submitted consumer rebates, commission payments, refunds, and other consumer payments on behalf of its for-profit and charitable business clients. Compl. ¶ 25. Like many other businesses, i-payout had been using Chexx for several years to distribute checks and bank transfers in various currencies to the individual contractors of i-payout's clients. In order to do so efficiently, i-payout pre-funded Chexx accounts that Chexx would draw from in order to process payments. The funds were held in trust by Chexx and Chexx never held title to them. When PacNet was designated by OFAC, the prepaid funds in these accounts were blocked.

At the time of the designation, Chexx was in possession of $2,337,356.85 of i-payout's funds in frozen accounts at two U.S. banks: $1,916,734.87 at Union Bank and $420,721.98 at TD Bank. Ex. A (Letter from Adam Smith to Renee Frappier, Nov. 2, 2017) at 1–3; *id.*, Ex. 2.* In addition, when the designation occurred, Chexx had issued 2,815 checks, which had not cleared, for payment to i-payout clients, totaling $878,159. *Id.* at 1, 3. Following the designation, the accounts were blocked and the checks were held in suspense. *Id.* at 2. The funds in these accounts and the uncleared checks are the subject of the present interpleader action. *See* Mot. Interpleader Deposit & Incorporated Mem. Law Supp. (Dkt. 2) ¶ 17 ("PacNet has initiated the transfer of funds, currently held at BMO Harris Bank, Union Bank, and other financial institutions, to deposit the full amount of the Funds into the registry of the Court.").

---

* On October 18, 2016, Chexx confirmed by letter that $2,337,365.85 represents the total i-payout funds being held by Chexx. Ex. A at 2 n.4; *id.*, Ex. 2.

On February 14, 2017, i-payout applied for an OFAC license seeking the transfer of the blocked i-payout funds held by Union Bank and TD Bank. Ex. B (Letter from Adam Smith to John Smith, Feb. 14, 2017). In support of the license application, i-payout provided OFAC with documented evidence that its funds were held in the blocked Chexx accounts at Union Bank and TD Bank. *See id.* OFAC never acted on i-payout's license application. Instead, OFAC negotiated a settlement with PacNet by which PacNet and its employees would be removed from the SDN List if PacNet agreed to, among other things, interplead funds owed to certain clients so that OFAC could make a claim to those funds. *See* Compl. ¶ 9.

On September 19, 2017, OFAC and PacNet signed a final agreement providing for the removal of PacNet from the SDN List. Compl. ¶ 10. Pursuant to that agreement, on October 6, 2017, OFAC identified $5,220,855.08 owed to 73 former PacNet clients that OFAC stated it had "a reasonable factual basis to believe . . . involve[ ] the proceeds of fraud or money laundering allegedly committed by a client of the PacNet Group." *Id.* ¶ 11. Neither OFAC nor PacNet identified the location of those former clients' funds. OFAC and PacNet agreed that the funds held in the bank accounts and other financial institutions totaling $5,220,855.08 should be interpled regardless of whether the funds were owed to the 73 former PacNet clients identified by OFAC. This approach led to i-payout's funds held in the accounts being interpled, despite OFAC having no claim to those funds. i-payout is not one of the 73 former PacNet clients identified by OFAC and was not named a Defendant/Claimant-in-Interpleader, despite its funds' presence in the accounts. As a result, OFAC has made no claim to i-payout's funds.

On November 1, 2017, in response to the removal of PacNet from the SDN List, i-payout sent Chexx a letter that identified the specific funds from previously frozen accounts and uncleared checks detailed above, and requested "the immediate remit of funds held in trust by Chexx, Inc.

4

that had been blocked due to sanctions applied by [OFAC]." Ex. A at 1. Following the letter, counsel for i-payout exchanged multiple e-mails with Chexx on the subject of the funds and their disposition. *See* Ex. C (E-mail thread between Adam Smith and Rosanne Day, Nov. 1–30, 2017). On November 30, 2017, after informing counsel for i-payout that one of the banks voluntarily paid all of Chexx's funds to the U.S. government, Chexx referred counsel for i-payout to PacNet's counsel. *Id.* Counsel for i-payout spoke with PacNet's counsel by phone that same day, at which point PacNet's counsel informed counsel for i-payout of the existence of the present interpleader action. Accordingly, i-payout was put on notice of the action on November 30, 2017.

On November 16, 2017, Dartmouth moved to intervene in the instant action, arguing that despite its funds being held in the accounts at issue, it was not named as a Defendant/Claimant-in-Interpleader, it is not one of the 73 former PacNet clients identified by OFAC, and it should be granted leave to intervene to assert its interest in its funds (Dkts. 20–21). On November 30, 2017, PacNet filed an opposition to Dartmouth's motion to intervene (Dkt. 25). On December 6, 2017, the Court granted Dartmouth's motion to intervene, determining that Dartmouth satisfied the requirements of Rule 24(a)(2) for intervention as of right (Dkt. 27). As noted above, i-payout's situation is nearly identical to Dartmouth's prior to intervention.

**ARGUMENT**

After learning of this interpleader action, i-payout took swift action protect its interest. i-payout has a real stake in the present matter due its substantial financial interest in the funds over which it has ownership. That interest will be significantly impaired if i-payout is not permitted to intervene, and the existing parties to the action cannot protect i-payout's interest. Accordingly, i-payout is entitled to intervene as of right pursuant to Rule 24(a)(2). In the alternative, i-payout should be permitted to intervene pursuant to Rule 24(b).

**I.  i-payout Should Be Granted Leave To Intervene As Of Right Under Rule 24(a)(2).**

The Second Circuit has explained that Rule 24(a)(2) requires the existence of four prerequisites to intervention as of right:

> "[A]n applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."

*St. John's Univ., N.Y. v. Bolton*, No. 08-5039, 2010 WL 5186823, at *2 (E.D.N.Y. Dec. 10, 2010) (Garaufis, J.) (quoting *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 485–88 (2d Cir. 1992)).  As the Supreme Court has recognized, "'a traditional basis for intervention [as of right] derives from interpleader practice; when a number of persons possess claims to a fund which are or may be mutually exclusive, intervention is allowed a claimant.'"  *John v. Sotheby's Inc.*, 141 F.R.D. 29, 34 (S.D.N.Y. 1992) (quoting *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 146 (1967)).  i-payout, as a claimant of a stake in the present interpleader action, fulfills all of the requirements for intervention as of right.

### A.  i-payout's Motion is Timely.

i-payout's request to intervene as of right is timely.  Although "[t]imelieness defies precise definition," *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994), the Second Circuit generally considers four factors when determining whether a motion to intervene is timely: "'(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of

timeliness,'" *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (quoting *Pitney Bowes*, 25 F.3d at 70).

PacNet filed the Complaint on October 16, 2017. i-Payout learned of this proceeding one-and-a-half months later, on November 30, 2017, when it was informed of its existence by PacNet's counsel. i-payout brings the instant motion to intervene a mere 21 days after it learned of the action. Similarly, Dartmouth did not learn about the lawsuit until November 1, 2017, when it was informed of its existence by PacNet's counsel. Mem. Supp. Dartmouth's Mot. Intervene ("Dartmouth Mem.") (Dkt. 21) at 5. Dartmouth brought its motion to intervene 15 days later. The Court granted Dartmouth's motion to intervene, finding, among other things, that it was timely "because . . . it was filed just one month after the interpleader action was filed." Order (Dkt. 27) at 2. i-payout's motion to intervene is timely because just over two month have passed between the instigation of the action and i-payout's motion to intervene, and i-payout has filed its motion within a similar timeframe as Dartmouth did after receiving notice of the lawsuit.

Further, intervention by i-payout will not cause prejudice to any party to the action. No responsive pleadings have been filed such that conceivable prejudice to a party could occur. Indeed, i-payout's inclusion as a party in this case, like Dartmouth's, "will facilitate PacNet's attempt to initiate the transfer of funds to its former clients." Dartmouth Mem. at 6. Thus, i-payout's motion is timely.

> **B. i-payout Has A Substantial Financial Interest In The Subject Matter Of This Action.**

As owner of the funds that were held in trust by Chexx, i-payout has a direct legal interest in the subject of this action. Rule 24(a)(2) requires that for intervention as of right, a putative intervenor must "claim[ ] a interest relating to the property or transaction which is the subject of the action." Fed. R. Civ. P. 24(a)(2). That interest must be "'direct, substantial, and legally
7

protectable.'" *St. John's Univ*, 2010 WL 5186823, at *2 (quoting *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). The Second Circuit has held that an economic interest is sufficient to establish this element for intervention as of right. *See Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 130 (2d Cir. 2001) (citing *N.Y. Pub. Interest Research Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 351–52 (2d Cir 1975) (per curiam)). Moreover, "'an economic interest [that is] concrete and related to the underlying subject matter of the action' may permit a 'creditor of a defendant to intervene in a lawsuit.'" *X.L. Specialty Ins. Co.*, 632 F. App'x 667, 670 (2d Cir. 2015) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004)).

i-payout's direct, substantial, and legally protectable interest in the subject matter of this interpleader action could not be clearer. This suit is about the "resolution of competing claims that [former PacNet clients] have, or may have, in funds that PacNet [held] on behalf of certain clients." Compl. ¶ 1. PacNet's own stated purpose for bringing the action is "to initiate the transfer of contested funds and to bring all actual and potential claimants before this Court so they may have an opportunity to assert their interests in the subject funds . . . and to obtain a judicial determination of their claims." *Id.* ¶ 13. i-payout was a client of PacNet and its substantial funds were held by PacNet in Union Bank and TD Bank; i-payout provided evidence to OFAC through its license application that its funds were held in these accounts. *See* Ex. B. Like Dartmouth, i-payout claims ownership of the funds at issue. The Court should similarly determine that i-payout has an interest in the matter for the purpose of intervention as of right.

### C. i-payout's Financial Interest Will Be Impaired If It Is Not Permitted To Intervene.

If i-payout is not permitted to intervene, its interest in the funds is likely to be significantly harmed. As PacNet has recognized, "[t]he claims and potential claims that could be asserted by

the Defendants are adverse to each other because the cumulative amounts that Defendants have asserted or may assert exceed the value of the Interpleader Fund." Compl. ¶ 59. Should the Court deny i-payout's request to intervene, the funds could be awarded to OFAC or other PacNet clients, which would cause i-payout to bring a separate proceeding to recover its funds. The Court should treat i-payout identically to Dartmouth for the purposes of evaluating whether its financial interest will be impaired if it is not permitted to intervene and deem this requirement for intervention as of right met.

### D. i-payout's Interest Is Not Adequately Represented By The Existing Parties.

No party to this action adequately represents i-payout's interests, which are in seeking the return of its funds held by PacNet. i-payout therefore satisfies the final prong of the Rule 24(a) analysis. "'[T]he burden to demonstrate inadequacy of representation is generally speaking "minimal."'" *United States v. N.Y. State Bd. of Elections*, 312 F. App'x 353, 354 (2d Cir. 2000) (quoting *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001)). "[E]vidence of . . . adversity of interest . . . may suffice to overcome the presumption of adequacy [of representation]." *Butler*, 250 F.3d at 180 (citing *United States v. Int'l Bus. Machs. Corp.*, 62 F.R.D. 530, 538 (S.D.N.Y. 1974)).

Here, like Dartmouth, i-payout can only adequately protect its interest through intervention in the interpleader action. Defendants' interests are adverse to those of i-payout "because the cumulative amounts that Defendants have asserted or may assert exceed the value of the Interpleader Fund." Compl. ¶ 59. As a result, Defendants will seek to place their own interests in the funds above those of i-payout and will seek to obtain the funds at i-payout's expense. Thus,

just as it determined Dartmouth satisfied this condition for intervention as of right, the Court should do the same for i-payout.

## II. In The Alternative, Permissive Intervention Is Appropriate Under Rule 24(b).

Should this Court determine that i-payout is not entitled to intervene as of right under Rule 24(a)(2), i-payout requests, in the alternative, that it be afforded leave to intervene pursuant to Rule 24(b). "On timely motion, the court must permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In exercising its discretion, "the court must consider whether the intervention will duly delay or prejudice the adjudication of the original parties' rights." *Id.*

Permissive intervention is proper here because i-payout shares a common question with the existing parties—whether it is has a claim to the funds at issue. As previously noted, intervention by i-payout would not cause undue delay or prejudice. *See supra* Section I.A.

## CONCLUSION

For the foregoing reasons, i-payout respectfully requests that this Court grant its Motion to Intervene in this action and file a responsive pleading within 14 days of entry of the Court's Order.

Dated: December 21, 2017          Respectfully submitted,

/s/ Gabrielle Levin
Gabrielle Levin

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000
Facsimile: 212.351.4025
GLevin@gibsondunn.com

*Attorney for Intervenor i-payout*

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filings (NEF). I further certify that paper copies of the foregoing document were served by U.S. mail on the United States Treasury Office, Office of Foreign Asset Control, Treasury Annex, 1500 Pennsylvania Avenue, NW, Washington, DC 20220 on December 21, 2017.

                                               /s/ Gabrielle Levin
                                               Gabrielle Levin