UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

PACNET SERVICES, LTD.,

        Plaintiff-in-Interpleader,      Civil Docket No. 17-CV-6027

        v.      (Garaufis, J.)
            (Bloom, M.J.)

OFFICE OF FOREIGN ASSETS CONTROL OF
THE UNITED STATES DEPARTMENT OF
THE TREASURY; JOHN DOE DEFENDANTS 1-73,

        Defendants/Claimants-in-Interpleader.

-----------------------------------------------------------------X

**UNITED STATES' RESPONSE IN OPPOSITION TO PACNET
SERVICES LTD.'S CROSS-MOTION TO COMPEL**

                        RICHARD P. DONOGHUE
                        United States Attorney
                        Eastern District of New York
                        271 Cadman Plaza East, 7th Floor
                        Brooklyn, New York 11201

Tanisha R. Payne
Assistant United States Attorney
    (Of Counsel)

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTS ........................................................................................................................................ 2

PROCEDURAL HISTORY ....................................................................................................... 4

ARGUMENT .............................................................................................................................. 6

    I.    The Funds At Issue Are Subject to Forfeiture and Should Remain Restrained By The Government In Connection With Pending Judicial Forfeiture Proceedings ........................................................................................ 6

    II.   The Court Should Deny PacNet's Motion to Consolidate the PacNet Related Actions .................................................................................................... 10

CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*Kaley v. United States*, 134 S.Ct. 1090 (2014) .................................................................6

*United States v. Blackman*, 746 F.3d 137 (4th Cir. 2014)...............................................6,7

*Metal Transp. Corp. v. Pac. Venture S. S. Corp.*, 288 F.2d 363 (2d Cir. 1961) ................8

*Federal Insurance Co. v. United States*, 882 F.3d 348 (2d Cir. 2018) .......................11, 12

*United States v. Corpus*, 491 F.3d 205 (5th Cir. 2007)................................................11,12

*United States v. Kennedy*, 201 F.3d 1324 (11th Cir. 2000)..............................................12

**Statutes**

18 U.S.C. § 981 ....................................................................................................................5

18 U.S.C. § 982 ....................................................................................................................5

18 U.S.C. § 983 ....................................................................................................................9

18 U.S.C. § 1341 ..................................................................................................................5

18 U.S.C. § 1956 ..................................................................................................................5

19 U.S.C. § 1607(a)..............................................................................................................9

21 U.S.C. § 853 ..................................................................................................................11

**Rules**

Fed. R. Civ. P. 32.2............................................................................................................11

**Regulations**

28 C.F.R. § 9........................................................................................................................7

## PRELIMINARY STATEMENT

The United States respectfully submits this memorandum of law in opposition to the cross-motion of Plaintiff-in-Interpleader PacNet Services Ltd. ("PacNet") to "compel the United States' compliance with the Interpleader Deposit Order…, or, in the alternative, consolidate this interpleader action with all related forfeiture proceedings pending in this district."[1]

In its motion to compel, PacNet seeks to compel the United States to release funds seized by the government pursuant to duly authorized seizure warrants issued in the United States District Court for the Eastern District of New York (hereinafter, the "Forfeitable Funds"), so that PacNet may use the Forfeitable Funds to fund the Interpleader Deposit in the instant interpleader action. The Court should deny PacNet's request. Pursuant to well-established law, any property which constitutes or is derived from proceeds traceable to certain criminal violations, including in the present case, mail fraud, is subject to forfeiture to the United States and may be seized by the United States Postal Service. See 18 U.S.C. §§ 981(a)(1)(C), 981(b)(1) and 28 U.S.C. § 2461(c). Further, contrary to PacNet's assertions, at the time of the seizure of the Forfeitable Funds at issue, the United States was unaware of any intention by PacNet to use the Forfeitable Funds to fund the Interpleader Deposit in this action.

PacNet's motion to compel alternatively moves this Court "to consolidate this interpleader action with all related forfeiture proceedings pending in this district." PacNet's request is misinformed and contrary to well-established principles of asset forfeiture law, and

---

[1] This memorandum of law is submitted separately from the Office of Foreign Assets Control's Reply Memorandum of Law in Support of Its Motion To Dismiss dated March 26, 2018, in order to aid the Court in addressing the asset forfeiture issues raised in the present proceeding.

1

the Court should deny PacNet's request. The federal forfeiture statutes provide the proper framework and forum in which to adjudicate property subject to forfeiture, as well as any third party claims to such property. As further detailed below, the funds at issue are subject to forfeiture and should therefore remain restrained by the government pending adjudication in forfeiture proceedings, which are currently pending in the Eastern District of New York.

## FACTS

This matter stems from an investigation by the United States Postal Inspection Service ("USPIS") into an international network of mass mailing fraud schemes that collectively have defrauded millions of victims, particularly elderly and otherwise vulnerable victims, across the United States out of hundreds of millions of dollars each year. These fraudulent mail campaigns involve tens of thousands of solicitations sent to consumers each year that promise large lottery and sweepstakes prizes or clairvoyant services. *See* Affidavit of Terrence Sullivan in Support of Seizure Warrant dated September 20, 2016 (Attached hereto as Exhibit A) (hereinafter "Sullivan Affidavit"), at ¶ 12. The solicitations contain several misrepresentations and typically state that the recipient has won a large cash prize that will be disbursed once the recipient sends in a small payment or "processing fee." *Id*. Victims who send in payments generally receive nothing of value in return, only an increased number of similar solicitations. *Id*.

Several different entities played an integral role in furthering the mass mail fraud schemes, including direct mailers, list brokers, printers, distributors, mailing houses, caging services and payment processors. *Id*. Payment processors collect the victim payments (cash, credit card and checks) received by the caging services. *Id*. The payment processors deposit the cash into its own accounts, process the credit card payments, withdraw the amount

2

designated on the checks from the victim's checking account, and subsequently distributes the proceeds from the victim payments to the participants of the mail fraud scheme. *Id.*

USPIS's investigation revealed that PacNet has a 20-year history of processing payments for numerous fraudulent mass-mail campaigns. *See* Sullivan Affidavit ¶ 22. PacNet is an international payment processor and money services business based in Vancouver, British Columbia, Canada, with subsidiaries and related companies around the world. *See* Sullivan Affidavit ¶ 20. PacNet processed payments sent in response to fraudulent mass-mailed solicitations by collecting cash payments and converting massive numbers of victim checks and credit card payments into cash, and wiring the proceeds to its clients, the orchestrators of various mass-mail fraud schemes. *See* Sullivan Affidavit ¶ 21. PacNet's role in processing victim payments for the schemes provided a valuable money laundering service to its clients, in that PacNet acted as the intermediary between the orchestrators of the fraud schemes and the banking system, which, as a result, obviated the need for the orchestrators to interact with the victims' banks directly, or deposit victim payments into their own bank accounts, thereby distancing themselves from law enforcement detection. *Id.* PacNet has been publicly implicated as the payment processor for several mass mail fraud schemes that have been the subject of civil and criminal enforcement actions going back as early as 1997. *See* Sullivan Affidavit ¶ 23. Notwithstanding, PacNet has continued to be the payment processor of choice in many mass-mail fraud schemes until around September 2016, when the law enforcement actions described below were taken against it. *See* Sullivan Affidavit ¶ 54.

3

## **PROCEDURAL HISTORY**

    A.    <u>The September 2016 Enforcement Actions</u>

In September 2016, the United States Department of Justice, the USPIS and the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") initiated civil and criminal enforcement actions against a global network of mass mailing fraud schemes that target elderly and vulnerable victims through solicitations for lottery, sweepstakes and clairvoyant services. The enforcement actions included criminal and civil injunctions against various entities, including direct mailers, list brokers, caging services, mass mailers, printers and payment processor PacNet.

The law enforcement actions against PacNet included a designation of PacNet by OFAC as a significant transnational criminal organization ("TCO"). *See* Complaint in Interpleader ¶ 3. (Dkt.[2] #1) The OFAC designation placed the PacNet Group of companies, which included approximately 30 corporate entities (including PacNet) and 12 employees and officers of the PacNet Group, on the Specially Designated Nationals and Blocked Persons List. *Id*. As a result of OFAC's designation, a block was placed on all property of the designees subject to U.S. jurisdiction, and all United States persons or persons within the United States were prohibited from transacting business with the designees without a license from OFAC. *Id*.

In addition, in furtherance of the asset forfeiture investigation conducted by the U.S. Attorney's Office for the Eastern District of New York (the "USAO-EDNY) and the USPIS, on or about September 20, 2016, a seizure warrant was issued by the Honorable Cheryl

---

[2] "Dkt" denotes docket entry.

4

L. Pollak, United States Magistrate Judge for the Eastern District of New York, authorizing the seizure of approximately $963,205.14 from PacNet's primary operating account at BMO Harris Bank (the "BMO 0703 Account"). Notably, in or about October 2016, following the seizure of the aforementioned funds, counsel for PacNet contacted the USAO-EDNY and requested that the government refrain from initiating a forfeiture action against the aforementioned seized funds in light of the OFAC designation against PacNet, to which the government agreed. The seized funds were deposited into the United States Marshals Service's seized asset deposit fund and currently remain there pending a judicial disposition as to forfeiture of those funds.

      B.    <u>The September 2017 Bank Account Seizures</u>

On or about September 21, 2017, the Honorable Vera M. Scanlon, United States Magistrate Judge, issued warrants authorizing the seizure of the following bank accounts controlled by PacNet: (i) approximately $1,503,251.39 from BMO Harris Bank, N.A. account number 3722949 held in the name of PacNet Services, Ltd.; (ii) approximately $765,611.07 from BMO Harris Bank, N.A. account number 20333306 held in the name of Chexx (Americas) Inc.; and (iii) approximately $362,222.68 from Avidia Bank account number 33595257 held in the Name of PacNet Services, Ltd (collectively, the "Forfeitable Funds"), finding probable cause to believe that the funds constitute or are derived from proceeds traceable to mail fraud, in violation of Title 18, United States Code, Section 1341 or a conspiracy to commit such offense, and money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957, and are subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A), 981(a)(1)(C), and 982(a)(1).

The Forfeitable Funds were placed in the United States Marshals Service's seized asset deposit fund and currently remain there pending a judicial disposition as to forfeiture.

## ARGUMENT

I. THE FUNDS AT ISSUE ARE SUBJECT TO FORFEITURE AND SHOULD REMAIN RESTRAINED BY THE GOVERNMENT IN CONNECTION WITH PENDING JUDICIAL FORFEITURE PROCEEDINGS

PacNet's motion seeks to compel the government to release the Forfeitable Funds so that they may be used to fund the Interpleader Deposit in this case. PacNet's motion should be denied since there is no legal basis to have funds that are lawfully restrained for forfeiture released for the purpose of adjudication in an interpleader action with claimants in interpleader. PacNet ignores the fact that there has already been a judicial finding that probable cause exists to believe that the Forfeitable Funds are traceable to proceeds of mail fraud and are thus subject to seizure and forfeiture to the United States. The Forfeitable Funds are also the subject of pending judicial forfeiture proceedings in the cases captioned *United States v. Ryan Young 18-CR-46 (JMA)* and *United States v. Ercan Barka 18-CR-31 (JMA)*. *See* Bill of Particulars, *United States v. Ryan Young, 18-CR-46 (JMA)* (Dkt. #5); *see also* Bill of Particulars, *United States v. Ercan Barka, 18-CR-31 (JMA)* (Dkt. #33). It is well settled that the goals of the forfeiture statutes are to punish the wrongdoer, deter future illegality, lessen the economic power of criminal enterprises, compensate victims, improve conditions in crime-damaged communities and support law enforcement activities. *Kaley v. United States*, 134 S.Ct 1090 (2014). Courts have recognized that a victim's hope of getting paid may rest on the government's ability to collect a defendant's assets under the forfeiture law. *See United States v.*

6

*Blackman*, 746 F.3d 137, 143 (4th Cir. 2014); 28 C.F.R. § 9 (setting forth procedures for victims to apply to have forfeited funds used to compensate their losses).

PacNet asserts several misleading facts and misrepresentations in support of its motion to compel. PacNet's arguments are without merit. For example, PacNet's claim that it "is unable to pay the full amount into the Court registry because the government has refused to allow the transfer of PacNet's funds as agreed upon pursuant to the Agreement" is inaccurate and disingenuous. *See* PacNet's Memorandum of Law p. 8. As an initial matter, a plain reading of the September 2017 Agreement between PacNet and OFAC reveals that whether PacNet should transfer the funds it held on behalf of its former clients into an escrow account or an interpleader action was a decision to be made entirely at PacNet's discretion. Further, nothing in the September 2017 Agreement dictates which bank accounts PacNet could use to fund the Interpleader Deposit. Thus, the choice of which bank accounts would be used to fund the Interpleader Deposit was also a decision to be made entirely at PacNet's discretion.

PacNet falsely claims that it provided "the *government* [emphasis added] with a list of PacNet's outstanding debts and liabilities to its former clients," as well as "a list of all outstanding balances/transactions and all of its bank accounts, including accounts at Union Bank, Avidia and BMO… which would be used to fund those transactions." *See* PacNet Memorandum Of Law p. 5. In fact, PacNet provided neither the USPIS nor DOJ, including the USAO-EDNY, with the aforementioned information. Further, even if the aforementioned information was provided by PacNet to OFAC in connection with their September 2017 Agreement, it was neither "examined" by nor given to USPIS or DOJ, including the USAO-EDNY. *See* PacNet Motion at p. 5. Notably, OFAC similarly maintains that it never received information as to which bank accounts PacNet would use to fund the Interpleader Deposit as

7

evidenced in OFAC's Reply Memorandum of Law dated March 26, 2018, set forth below in pertinent part:

> Contrary to PacNet's aspersions otherwise, prior to PacNet's motion for leave to deposit funds into the Court's registry, OFAC was not aware of the specific accounts from which PacNet intended to fund the interpleader action.

*Id*. at p. 10.   Thus, prior to PacNet's Motion for Interpleader Deposit filed with the Court on or about October 17, 2017, the government was not aware of the bank accounts PacNet intended to use to fund the Interpleader Deposit.   PacNet's use of erroneous facts to disparage the government's asset forfeiture investigation by suggesting that the government acted in bad faith should therefore be rejected. *See* PacNet Memorandum Of Law p. 13.

Presumably, PacNet could have used other funds at its disposal to fund the Interpleader Deposit, but nevertheless chose to seek leave of the Court to fund the Interpleader Deposit with the very same bank accounts that the government had seized approximately one month earlier.   Even assuming, arguendo, that PacNet had no other funds with which to fund the Interpleader Deposit, which PacNet has not alleged, PacNet could have, of course, moved to reduce the interpleader deposit amount since a plaintiff in interpleader is only obligated to interplead funds within its possession. *See Metal Transp. Corp. v. Pac. Venture S. S. Corp.*, 288 F.2d 363, 365 (2d Cir. 1961) (a plaintiff in an action of interpleader must deposit the entire sum *in its possession [emphasis added]* which the claimants claim).

Another misrepresentation in PacNet's motion was its allegation that the OFAC designation was somehow an effort by OFAC, the USPIS and DOJ to "coerce cooperation by PacNet in a criminal investigation." *See* PacNet Memorandum Of Law p. 4.   This unexplained and unsubstantiated accusation is without merit and has no bearing on whether funds lawfully

8

restrained by the government for forfeiture should be released to fund the Interpleader Deposit. Likewise, PacNet provides little context or background for its allegation that a DOJ attorney informed it that it was not the target of an investigation. *See* PacNet Memorandum Of Law p. 4. PacNet fails to mention that the referenced communication from DOJ related to an investigation into another mail fraud entity conducted prior to the current investigation against PacNet.

Also without merit are PacNet's misinformed allegations regarding failure of the government to provide formal notice of the bank account seizures. *See* PacNet Memorandum Of Law pgs. 9, 12-13. PacNet's reliance on the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA) codified in 18 U.S.C. § 983, is misguided since the 60-day time limit to provide notice of a seizure and the 90-day time limit to commence a judicial action only apply to *administrative* forfeitures, not judicial forfeitures. As a threshold matter, the seizures conducted in this case are not, and cannot, as a matter of statute, be forfeited administratively because they involve property valued greater than $500,000, and thus, must proceed through the judicial forfeiture process. *See* 19 U.S.C. § 1607(a). Thus, for judicial forfeitures, there are no statutorily proscribed time limits for notice of a seizure nor to commence a judicial forfeiture action. In any event, PacNet had actual notice of all of the seizures made in this case. As previously noted, approximately one month after the September 2016 seizure, counsel for PacNet and the government agreed to hold any forfeiture complaint against the seized BMO 0703 Account in abeyance. With respect to the September 2017 seizures, the government provided PacNet's counsel with a list of the seized accounts and the amounts seized. Further, the government initiated a judicial forfeiture action against the Forfeitable Funds seized in September 2017 by filing a Bill of Particulars in the criminal cases captioned

*United States v. Ryan Young 18-CR-46 (JMA)* and *United States v. Ercan Barka, 18-CR-31 (JMA)*. *See* Bill of Particulars, *United States v. Ryan Young 18-CR-46 (JMA)* (Dkt. #4); *see also* Bill of Particulars, *United States v. Ercan Barka, 18-CR-31 (JMA)* (Dkt. #33). A judicial action was also commenced against the funds seized in September 2016 from the BMO 0703 Account with the filing of a Bill of Particulars in the aforementioned criminal cases. *See* Bill of Particulars, *United States v. Ryan Young 18-CR-46 (JMA)* (Dkt. #11); *see also* Bill of Particulars, *United States v. Ercan Barka, 18-CR-31 (JMA)* (Dkt. #33).

The Forfeitable Funds are presently in the United States Marshals' Service seized asset deposit fund pending judicial disposition, which is consistent with the lawful practice in this district for funds seized pending a forfeiture adjudication. Accordingly, PacNet's cross-motion to compel the government to release the Forfeitable Funds should be denied.

II. THE COURT SHOULD DENY PACNET'S MOTION TO CONSOLIDATE THE PACNET RELATED ACTIONS

In its cross motion, PacNet moves, in the alternative, to consolidate the instant interpleader action with "all related forfeiture proceedings pending in this district." As an initial matter, PacNet does not specify which forfeiture actions it refers to for consolidation. In any event, PacNet's motion should be denied since consolidation is not warranted in light of the judicial criminal forfeiture actions already pending in the Eastern District of New York in the cases *United States v. Ercan Barka, 18-CR-31 (JMA)* and *United States v. Ryan Young, 18-CR-46 (JMA)*.

Questions of ownership with respect to the funds seized from the PacNet-related accounts are most appropriately resolved in the aforementioned criminal cases through a

10

criminal forfeiture ancillary proceeding, which provides a well-established forum for the adjudication of third-party claims. See 21 U.S.C. § 853(n) (providing for the filing of third-party petitions asserting legal interests in property subject to forfetiure); Fed. R. Crim. P. 32.2(c) (setting forth procedures governing conduct of ancillary proceeding); *Federal Insurance Co. v. United States,* 882 F.3d 348, 370 (2d Cir. 2018) (the forfeiture statute [21 U.S.C. § 853(k)] provides that a third party claiming an interest in property subject to forfeiture may adjudicate that interest against the government only as provided in [21 U.S.C.] § 853(n)).

In addition, determining the forfeitability of PacNet-related funds in the pending criminal forfeiture proceedings is in the interests of judicial economy and, ultimately, will afford the opportunity for remission to victims. See 21 U.S.C. § 853(i)(1) (authorizing Attorney General to grant petitions for remission of forfeited property). Further, adjudicating issues of ownership of the seized funds in the criminal forfeiture ancillary proceeding will not prejudice PacNet, nor any Defendant in Interpleader or third-party claimant to the seized funds. Thus, PacNet's contention that failure to deposit the full value of the Interpleader Deposit will deprive the claimants in interpleader of a judicial resolution to their competing claims is incorrect and ignores the procedures already established by law to adjudicate third-party claims to forfeitable property. 21 U.S.C. § 853(n); Fed. R. Crim. P. 32.2(c). Moreover, in its Complaint-in-Interpleader filed in this action, PacNet asserts that it has no interest in the funds it held on behalf of its former clients. *See* Complaint ¶ 12 (Dkt. # 1).

As the Second Circuit has held, "to …ensure that the adjudication of entitlements to forfeited property is consolidated in a single proceeding, the filing of an indictment or information stays any civil actions claiming a portion of the proceeds of the alleged offense." *Federal Insurance Co. v. United States,* 882 F.3d at 370; *see also* <u>United</u>

11

States v. Corpus, 491 F.3d 205, 208 n.1 (5th Cir. 2007); United States v. Kennedy, 201 F.3d 1324, 1326 n.6 (11th Cir. 2000). Thus, it is the forfeiture ancillary proceeding in the aforementioned criminal cases, as opposed to the instant interpleader action, that provides the appropriate forum to adjudicate any claims to the forfeitable funds at issue herein.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny in its entirety PacNet's cross-motion to compel, and grant such other and further relief as this Court may deem proper and just.

Dated: Brooklyn, New York
       March 26, 2018

        Respectfully submitted,

        RICHARD P. DONOGHUE
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East, 7th Floor
        Brooklyn, New York 11201

By:  s/ Tanisha R. Payne
     Tanisha R. Payne
     Assistant United States Attorney
     (718) 254-6358